

# Notice of Service of Process

**A3M / ALL**
**Transmittal Number: 22685959**
**Date Processed: 02/01/2021**

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215-2410 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Nationwide Mutual Insurance Company<br>Entity ID Number  3277054 |
| **Entity Served:** | Nationwide Mutual Insurance Company |
| **Title of Action:** | Devil's Reach Condominium and Devil's Reach Condomtnium Unit Owners Association vs. Nationwide Mutual Insurance Company |
| **Matter Name/ID:** | Devil's Reach Condominium and Devil's Reach Condomtnium Unit Owners Association vs. Nationwide Mutual Insurance Company (10910818) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Prince William County Circuit Court, VA |
| **Case/Reference No:** | CL20002244-00 |
| **Jurisdiction Served:** | Virginia |
| **Date Served on CSC:** | 01/29/2021 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Green, Hodges & Gowland PLLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

SERVE THIS COPY

# COMMONWEALTH OF VIRGINIA



PRINCE WILLIAM CIRCUIT COURT
Civil Division
9311 LEE AVENUE ROOM 314
MANASSAS VA 20110

Summons

To: NATIONWIDE MUTUAL INSURANCE
COMPANY C/O CORPORATION
SERVICE COMPANY
100 SHOCKOE SLIP 2ND FLOOR
RICHMOND VA 23219

Case No. 153CL20002244-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, January 26, 2021

Clerk of Court: JACQUELINE C SMITH

by _Brenda Elford_

(CLERK/DEPUTY CLERK )

Instructions:      AMENDED COMPLAINT

Hearing Official:

Attorney's name:      HODGES, THOMAS B; JR
109 BERRINGTON CT
800-683-6975
RICHMOND VA 23221

## IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY

| | |
|---|---|
| DEVIL'S REACH CONDOMINIUM ) | |
| ) | |
| and ) | |
| ) | |
| DEVIL'S REACH CONDOMINIUM ) | |
| UNIT OWNERS ASSOCIATION ) | |
| 1730 Grover Glen Court ) | |
| Woodbridge, VA 22192 ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: CL20002244-00 |
| ) | |
| NATIONWIDE MUTUAL INSURANCE ) | |
| COMPANY ) | |
| SERVE:    Corporation Service Company ) | |
| 100 Shockoe Slip, 2nd Floor ) | |
| Richmond, VA 23219 ) | |
| ) | |
| Defendant. ) | |
| ) | |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

COMES NOW the Plaintiffs, the Devil's Reach Condominium (the "Condominium") and

Devil's Reach Condominium Unit Owners Association (the "Association")(collectively the

"Plaintiffs" or "Insureds"), by counsel, and file this First Amended Complaint against the Defendant,

Nationwide Mutual Insurance Company ("Defendant" or "Nationwide"), and state as follows:

### JURISDICTION

1.      Plaintiffs are individuals residing in, and are citizens of, the Commonwealth of

Virginia. Devil's Reach Condominium is a Common Interest Community Association registered

with the Commonwealth of Virginia Department of Professional and Occupational Regulation,

1

organized under the laws of Virginia, and situated in Prince William County, Virginia. Devil's Reach Condominium Unit Owners Association is an unincorporated Virginia association created by the Condominium's governing documents to administer the Condominium. The membership consists of all unit owners in the Condominium.

2.      Defendant is an Ohio corporation with its principal place of business located at One Nationwide Plaza, Columbus, Ohio 43215 who regularly does business in the Commonwealth of Virginia and is registered to do so.

3.      This Court has jurisdiction over the parties because the insurance policy which is the subject of this Complaint has insured a property located in Prince William County, Virginia and the amount in controversy exceeds $4,500.00, exclusive of interests and costs.

## VENUE

4.      Venue is proper in Prince William County in that the insurance policy provided insurance coverage for property located in Prince William County, Virginia.

## FACTS GIVING RISE TO THE COMPLAINT

5.      On or about March 2, 2018, a wind storm occurred at the Condominium property located at 1730 Grover Glen Court, Woodbridge, Virginia 22192 (the "Property").

6.      The Property consists of twenty (20) two-story buildings, each containing multiple condominium units.

7.      The buildings at the Property sustained wind damage to the roofs, among other things.

8.      On March 2, 2018, and at all times relevant hereto, Plaintiffs had a contract of

2

insurance with the Defendant:  Policy No. ACP BPHM2473259833 for the period from May 15, 2017 to May 15, 2018. (the "Policy").

9.     Under the Policy, Defendant agreed to insure and cover such wind damage.

10.    Plaintiffs submitted a claim to Nationwide on August 16, 2019. (the "Claim")

11.    After two months, on October 17, 2019, Nationwide inspected the wind damage at the Property.  No reason was given for the delay.

12.    On October 30, 2019, Nationwide requested the Association provide a copy of the Condominium's Bylaws as well as any information regarding recent roof replacements at the Property.

13.    On October 31, 2019, the Association provided a copy of its Bylaws to Nationwide.

14.    On November 15, 2019, the Association sent an email to Nationwide asking for an update on the investigation.

15.    On November 18, 2019, Nationwide adjuster Thomas Garrigan indicated that an initial repair estimate would be available the week of December 2-6, 2019.

16.    As of December 6, 2019, Nationwide had not provided its repair estimate to the Association.

17.    On December 13, 2019, the Association provided the roof replacement information to Nationwide as requested and also asked for an update on Nationwide's investigation.

18.    As of January 7, 2020, Nationwide had not provided a repair estimate or responded to the Association's request for an update on the investigation.

19.    On January 7, 2020, the Association emailed a letter to Nationwide requesting an update on the investigation and noting that Nationwide's failure to respond the Association's email

3

on December 13, 2019 was a violation of the Virginia Insurance Code Sections 14 V.A.C. 5-400-50(C) and 14 V.A.C. 5-8400-60(B).

20.     On January 23, 2020, Nationwide sent the Association an estimate showing a replacement cost value for the Claim of $481,628.19 (the "Nationwide Estimate").

21.     Nationwide's Estimate failed to account for all of the covered damage at the Property and the total costs to repair the damage.

22.     On February 7, 2020, the Association emailed a letter to Nationwide stating that the Nationwide Estimate failed to account for the total cost of repairs and that the Association's public adjuster would be preparing a new estimate for Nationwide's approval. The Association requested that Nationwide enter into a tolling agreement because the statute of limitations would run on the Claim in less than a month.

23.  .  On February 14, 2020, Nationwide sent a letter to the Association refusing to agree to a tolling agreement. Nationwide took the position that the Association should be able to review a complicated repair estimate in three weeks that it took them three months to create.

24.     On March 2, 2020, the Association's public adjuster, Ronald Cooper, emailed a detailed estimate to Garrigan which showed the cost of repairs of $1,825,657.99 (the "Cooper Estimate"). The email noted that the wind-damaged shingles allowed water infiltration which damaged the roof sheeting and rafters on certain units at the Property and that insulation and drywall had been affected. Cooper's estimate also allowed for overhead and profit and other line items which were not included on the Nationwide Estimate.

25.     On March 10, 2020, Cooper and Garrigan discussed the Cooper Estimate. Upon information and belief, during that conversation, Garrigan told Cooper that the Association would

4

need to go to litigation to reach a settlement. Garrigan also said that Cooper could not speak with Garrigan's supervisor at Nationwide because that individual was "too busy".

26.     On March 19, 2020, Nationwide issued a reservation of rights letter to the Association acknowledging notice of interior damages and requesting certain information regarding the damage.

27.     On March 24, 2020 counsel for the Association sent a letter to Nationwide providing all of the information requested regarding the interior damages.

28.     On April 10, 2020, Cooper sent Garrigan a revised estimate showing a reduced cost of repairs of $1,461,194.82 ("Cooper Revised Estimate").

29.     Garrigan disagreed with Cooper's Revised Estimate and offered to have Jenkins Restoration provide an "independent" third-party estimate for repairs.

30.     On May 14, 2020, Garrigan emailed a copy of the Jenkins Restoration estimate showing a total cost of repair of $585,689.84 (the "Nationwide/Jenkins Estimate"). Contrary to Garrigan's assurances, the estimate did not appear to be an "independent" estimate. Upon information and belief, Jenkins Restoration had simply taken the Nationwide Estimate, pasted its logo in place of the Nationwide logo, and added some additional line items.

31.     On June 25, 2020, Nationwide sent a settlement letter and the Nationwide/Jenkins Estimate along with a payment for additional costs shown on the Nationwide/Jenkins Estimate in the amount of $103,961.88. The letter noted that the held back depreciation now amounted to $74,659.44. The letter also requested dates for Nationwide to inspect the interior damages.

32.     On September 2 and 3, 2020, Garrigan inspected the interior damages at the property. By that time the roof repairs had been completed, and Garrigan released the depreciation amount of $74,659.44 on September 3, 2020.

5

33.     On October 22, 2020, Nationwide provided an estimate for repairs to the interior damages in the amount of $7,566.84. This undisputed cost of repairs for the interior damages has not been paid.

34.     On November 10, 2020, Cooper sent Garrigan an email attaching a revised final estimate for repairs with a total amount owed of $1,058,810.97 (the "Cooper Final Estimate"). Cooper noted in his email that his estimate included overhead and profit because a general contractor was required by state law, contractor licensing requirements, and the complexity of the project. Cooper also noted the Nationwide/Jenkins Estimate underpaid for worker's compensation.

35.     Soon thereafter, Cooper and Garrigan had a phone call to discuss Cooper's Final Estimate and settlement proposal. Garrigan refused to further adjust the Claim without explanation or justification.

36.     At all times applicable hereto, the Policy was in full force, and all insurance premiums had been fully paid.

37.     The Property sustained wind damage to the roofs and other building components, all of which were covered under the Policy.

38.     The loss and damage, which was sustained and resulted from the covered cause of loss, and such loss, damage and injury was not excluded or limited under the policy.

39.     Since Nationwide has paid a portion of the Claim, Nationwide is estopped to deny coverage or has waived the right to deny coverage.

40.     Plaintiffs have sustained losses which are covered under the Policy, and which are due and payable, but for which Nationwide has failed to make payment.

41.     Nationwide accepted the Claim, paid portions of the Claim, but has not paid the

6

Claim in full.

42.　Plaintiffs have satisfied and met their obligations under the Policy, and substantially complied with the Policy provisions.

43.　Nationwide has failed to adjust the claim in a good faith method by failing to communicate the status of its investigation to the Plaintiffs in a timely manner.

44.　Nationwide has failed to adjust the Claim in good faith by not conducting a reasonable and timely investigation of the facts and circumstances of the Claim by taking almost seven months to inspect the damage and issue its initial settlement.

45.　Nationwide has failed to adjust the Claim in good faith by telling the Insureds they would need to file a lawsuit to get a settlement.

46.　Nationwide failed to adjust the Claim in good faith by refusing to let Cooper discuss the Claim with Garrigan's supervisor because he was "too busy".

47.　Nationwide failed to adjust the Claim in good faith by assigning an adjuster to the Claim who, upon information and belief, was not tasked with authority to settle the Claim for a reasonable amount.

48.　Nationwide adjusted the Claim in such a way as to impair the ability of the Plaintiffs to receive the benefits of the insurance contract, including its right to file suit.

49.　Nationwide failed to adjust the Claim in good faith by retaining an "independent" building consultant that used the Nationwide Estimate as a template, a practice which may be referred to as "bid-rigging."

50.　Nationwide failed to adjust the claim in good faith by failing to pay the amounts due under the policy, including general contractor's overhead and profit.

7

## COUNT 1
### BREACH OF INSURANCE CONTRACT

51.     Paragraphs 1-50 are incorporated herein.

52.     Nationwide breached the insurance contract with the Plaintiffs.

53.     Nationwide breached the contract by failing to investigate the facts and circumstances

of the Claim in a reasonable and timely manner.

54.     Nationwide breached the contract by failing to pay all covered damages and amounts

due under the Policy, including overhead and profit.

55.     Plaintiffs have been damaged by the breach of contract by Nationwide.

56.     As a direct result of Nationwide's breach of the contract, Plaintiffs have suffered

damages in the amount of $473,121.13.

WHEREFORE, the Plaintiffs move this Court to enter judgment against the Defendant in the

amount of $473,121.13 plus interest at the judgment rate thereafter until paid, costs and such other

relief as to this Court deems just and reasonable.

## COUNT II
### ATTORNEY FEES AND COSTS AGAINST NATIONWIDE FOR BAD FAITH

57.     Paragraphs 1-56 are incorporated herein.

58.     Nationwide failed to adjust the Claim in good faith by failing to adjust the loss in a

timely manner.

59.     Nationwide has failed to adjust the loss in a timely manner by taking almost seven

months to investigate the Claim and issue the initial settlement.

60,     Nationwide has failed to adjust the Claim in good faith by failing to communicate the

8

status of the investigation to the Plaintiffs as required by the Virginia Insurance Code.

61.     Nationwide has failed to adjust the Claim in good faith by misleading the Plaintiffs as to when the initial settlement estimate would be available.

62.     Nationwide failed to adjust the Claim in good faith by adjusting the Claim in such a way as to delay and impair the rights of the Plaintiffs to exercise its right under the contract to file a lawsuit.

63.     Nationwide failed to adjust the Claim in good faith by engaging in "bid-rigging."

64.     Nationwide failed to adjust the Claim in good faith by telling the Insureds they would need to file a lawsuit to get a settlement.

65.     Nationwide failed to adjust the Claim in good faith by failing to pay for repairs to the interior damages in a timely manner.

66.     Nationwide has failed to adjust the Claim in good faith by not allowing for general contractor's overhead and profit when it is required by Virginia law and the complexity of the project.

67.     Nationwide's failure to adjust the Claim in good faith has resulted in damage to the Plaintiffs.

68.     Pursuant to Va. Code § 38.2-209, an insured may recover costs and reasonable attorney fees if the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make full payment to the insured under the policy.

69.     Nationwide has failed to pay the Plaintiffs for the total amount of damage in the Claim.

70.     In addition to a judgment for the amount of the loss not paid, Plaintiffs are entitled to

9

payment of its costs and attorney fees herein.

WHEREFORE, the Plaintiffs move this Court to enter judgment against Nationwide for an

award of costs and attorney fees incurred in this action, and such other relief as this Court deems just

and reasonable.

**A TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE.**

DEVIL'S REACH CONDOMINIUM
DEVIL'S REACH CONDOMINIUM UNIT OWNERS
ASSOCIATION
By Counsel

Thomas B. Hodges Jr.
Virginia State Bar No. 75000
Green, Hodges & Gowland PLLC
109 Berrington Court
Richmond, Virginia 23221
P: 800.683.6975
F: 877.274.2898
thodges@ghglawyers.com
*Counsel for Plaintiffs*

10